No. 113,963

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

VANCE LEON WHITE,
*Appellant*.

SYLLABUS BY THE COURT

1.

A claim of prosecutorial error based on comments made during voir dire, opening statements, or closing argument—comments that are not evidence—will be reviewed on appeal even when a contemporaneous objection was not made at the trial level.

2.

In this case, a prosecutor's statement during closing argument calling the defendant's theory of defense "ridiculous" is not clearly erroneous and does not so prejudice the jury to deny the defendant a fair trial.

3.

District courts are encouraged to use PIK instructions since they have been developed by knowledgeable committees to bring accuracy, clarity, and uniformity to jury instructions.

4.

When no timely objection is lodged against a jury instruction given during the trial, we review the instruction for clear error.

1

**5.**

The use of the word "should" in PIK Crim. 4th 51.010 is legally accurate and does not direct the jury to a verdict in favor of the State.

**6.**

Statutes are presumed constitutional. All doubts must be resolved in favor of its validity, and before the act may be stricken down, it must clearly appear the statute violates the constitution.

**7.**

K.S.A. 2015 Supp. 21-5415(a)(1) is not unconstitutionally vague because it uses the word "fear" to describe criminal conduct. The word "fear" is understood by persons of common intelligence to mean an unpleasant emotion caused by a belief that someone or something is dangerous, likely to cause pain, or a threat.

**8.**

K.S.A. 2015 Supp. 21-5415(a)(1) does not require a definition of how the victim should respond to the threat of violence; the defendant's decision to make the threat of violence triggers criminal liability.

**9.**

K.S.A. 2015 Supp. 21-5415(a)(1) is not overbroad as it is clearly designed to prohibit a limited class of impermissible speech—threats to commit violence, *i.e.*, true threats.

**10.**

K.S.A. 2015 Supp. 21-5415(a)(1) does not require the State to prove the defendant actually intended to commit the violence. Once a threat of violence is conveyed, that is sufficient.

Appeal from Cheyenne District Court; JACK L. BURR, judge. Opinion filed October 7, 2016. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

SCHROEDER, J.: Vance Leon White appeals his jury conviction, claiming four points of error: (1) During closing argument, the prosecutor committed prosecutorial error; (2) the district court improperly instructed the jury because "should" is included in PIK Crim. 4th 51.010; (3) K.S.A. 2013 Supp. 21-5415(a)(1) is unconstitutionally vague; and (4) K.S.A. 2013 Supp. 21-5415(a)(1) is unconstitutionally overbroad. We have exhaustively examined each one of White's claims and find no error. For the reasons stated below, we affirm.

FACTS

White and his ex-wife were going through a contentious divorce. Kari Gilliland, of the Millikan Law Office and former Cheyenne County Attorney, was his ex-wife's attorney. White was proceeding pro se. White was angry as the divorce proceedings progressed, and toward the end of the proceedings he began expressing anger at Gilliland. White had several telephone calls with Gilliland during which he would become upset and belligerent. As a result, Gilliland stopped the phone calls and required White to communicate with her office in writing.

Subsequently, Gilliland received several emails from White indicating he was upset about the contents of a proposed journal entry. White accused Gilliland of perjuring herself and he referred to the other parties in the divorce proceedings as being part of a

"cabal." Gilliland stated that while in court, White would refer to her as a "dirty whore," "lying bitch," and a "conspirator," as well as accusing her of having control over the entire county and the people in it.

On June 26, 2013, White contacted law enforcement because his ex-wife was preventing him from visiting their minor children. White spoke with Undersheriff Antonio Rodriguez of the Cheyenne County Sheriff's Office and told him if he did not get to see his children he "would come in the night and take care of the people who had anything to do with it." White told Rodriguez he would "start a war the police could not finish." Rodriguez indicated this was normal baseline behavior for White, so he did not arrest White for those comments. Rodriguez had extensive personal interaction with White, had become desensitized to White's angry comments, and felt White was just blowing off steam. White testified he was upset but was not planning to hurt anyone or destroy anything.

On June 27, 2013, White called Gilliland's law office and spoke with her assistant. White told the assistant his comments were not directed at her, but he became belligerent when discussing Gilliland. During the conversation, he called Gilliland a "bitch," and the assistant hung up on him. White testified he called Gilliland's office to discuss the denial of his visitation rights and was upset over not being able to see his children. Karan Thadani, then the current Cheyenne County Attorney, was an associate at Gilliland's law office. He spoke with White on the phone and told him, "If you're going to keep doing this, I'm going to have you arrested for harassment."

On July 2, 2013, White contacted Dorothy Halley at the Kansas Attorney General's Victim Services Division. White was very angry, indicating he believed he was a victim of the system, the courts, and the county attorney. He felt his ex-wife was getting away with various crimes due to a corrupt system in St. Francis, referring to her as a "drug-crazed bitch." White told Halley the State was keeping his kids from him. He said

4

Gilliland was corrupt and was responsible for him not having his children. He told Halley, "She fucked with me and I'll fuck her up." He said it was not a threat, but a promise, and he had told the Cheyenne County Sheriff, Cody Beeson, the same thing.

Halley asked White how her office could help him. White told her it was too late to get the system to work, but he was going to let everyone, including CNN, know how bad it was. He said he would "start holy hell war in St. Francis, America." Throughout the phone call, White expressed anger toward Gilliland, Cheyenne County, and his ex-wife. He told Halley to contact the sheriff and tell him to arrest him.

After the call with White, Halley contacted the Cheyenne County Sheriff's Office. Although White made no specific threats against his ex-wife or his children, Halley used the term "familicide" when discussing her concerns with law enforcement. Halley also indicated White's comments about starting holy hell war in St. Francis and contacting CNN made her think he was planning something big.

Beeson called White to discuss his phone call with Halley. White told Beeson he felt the call was necessary to make a point about his case. White stood by his comments and told Beeson if he did not get his kids back in 10 days, there would be holy hell war for Cheyenne County. White also told Beeson, "if there was a 911 call at his ex-wife's house or [Gilliland's] house, not to come because he didn't want [Beeson] to [get] hurt." Beeson told White his comments would not help the status with his children. White responded he would probably go to prison but would go in soft and come out hard and get revenge on those who sent him there. White also told Beeson he had been pushed to the edge by the system. Law enforcement did not know where White was located at the time, so a decision was made to evacuate the Cheyenne County Courthouse and the Milliken Law Office. White was arrested later that evening in Saline County.

5

White was charged with two counts of aggravated criminal threat in violation of K.S.A. 2013 Supp. 21-5415(b), two counts of harassment by telephone in violation of K.S.A. 2013 Supp. 21-6206(a)(1)(B) and (C), and one count of stalking in violation of K.S.A. 2013 Supp. 21-5427(a)(2). At trial, White testified the comments he made were because the former county attorney was representing his ex-wife and he could not get law enforcement to help him. He also felt several crimes were being downplayed or whitewashed. White stated he called the victim's helpline because he felt he was a victim of the system. He denied saying he would "fuck up" Gilliland; rather, he said she "was fucking with me, and I'm going to fuck back." White said he was not trying to terrorize anyone, he was only trying to draw attention to the injustice being done in his case. He denied calling Gilliland names in court, said no one would listen to him about the wrongs being done in his case, and he had had enough. He wanted someone to look into the conflicts of interest, corruption, and crimes being committed by various county officials.

White's theory of defense was that his statements were political statements aimed at perceived corruption in Cheyenne County and he was just blowing off steam. White further argued his statements were conditional and therefore not true threats and that the alleged threats seemed to grow as each person in the chain of information passed along details of his call to the Attorney General's office. During closing arguments, the prosecutor called White's theory of defense "ridiculous." The jury acquitted White of one count of telephone harassment but convicted him of two counts of aggravated criminal threat, one count of telephone harassment, and one count of stalking. White was sentenced to 32 months' imprisonment, with his sentenced suspended, and was placed on 36 months' supervised probation.

White timely appealed. Additional facts are set forth as necessary herein.

ANALYSIS

*No prejudice from the prosecutor's use of "ridiculous" during closing argument.*

*Standard of Review*

A claim of prosecutorial error based on comments made during voir dire, opening statements, or closing argument—comments that are not evidence—will be reviewed on appeal even when a contemporaneous objection was not made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012); see *State v. Roeder*, 300 Kan. 901, 932, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015).

As recently analyzed by our Supreme Court in *State v. Sherman*, 305 Kan. ___, ___ P.3d ___, 2016 WL 4719688 (2016), appellate review of alleged prosecutorial error involving improper comments to the jury requires

"a two-step process to evaluate claims of prosecutorial error. These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman*[ *v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when

'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' *State v. Sprague*, 303 Kan. 418, 430, 362 P.3d 828 (2015)." *Sherman*, 2016 WL 4719688, at *14.

*Discussion*

White argues the prosecutor's comments in closing argument amounted to prosecutorial error, thereby denying him the right to a fair trial. White points to two instances in which the prosecutor called White's theory of the defense "ridiculous." First, in addressing White's argument that his statements were not intended to cause anyone to respond, the prosecutor said:  "Apparently that means no harm no foul. Of course, that's ridiculous." During rebuttal, the prosecutor went on to say:

> "Not his fault, it's the lawyer's fault. It's like we're dealing with a wild animal here. Hey, as long as you stay 50 feet away, everything's good. It's your fault if you go close to him. That's ridiculous. It's not the victim's fault; never heard so much victim blaming in my life."

Before proceeding with our analysis on White's claim of prosecutorial error, we pause to note that neither defense counsel nor the district court challenged the prosecutor's closing argument, which to us indicates that during the trial of this matter, no one thought the statements, when made, were so improper as to warrant an objection.

White argues that referring to the defendant's story as "ridiculous" is outside the wide latitude allowed to the prosecution during closing argument. In support of this argument, White cites to *State v. Douglas*, 274 Kan. 96, 108, 49 P.3d 446 (2002), wherein the prosecutor called Douglas' testimony unbelievable, told the jury it should not believe a word out of Douglas' mouth, and called Douglas' story "ridiculous and absurd and ludicrous." Given the *Douglas* court went directly to the issue of prejudicial conduct,

without deciding the issue, we will assume for purposes of this opinion the use of the word ridiculous is outside the wide latitude allowed prosecutors during closing argument.

Douglas' attorney timely objected to the comment and the jury was instructed to disregard it. The *Douglas* court held there was no reversible error because the jury had been instructed to disregard the prosecutor's comments and the comments were not so prejudicial as to be incurable. 274 Kan. at 108.

Here, the facts are distinguishable since White did not object to the prosecutor's remarks and the jury was never instructed to disregard them. To this extent, any prejudicial effect of the prosecutor's comments could not be cured as it was in *Douglas*. However, the *Douglas* court did not say whether the prosecutor's remarks, standing alone, would have been reversible error had the jury not been instructed to disregard it. See 274 Kan. at 108. Further, the prosecutor in *Douglas* used the words absurd and ludicrous in addition to the word ridiculous. Here, White only takes exception to the use of the word ridiculous. In *Douglas*, the Supreme Court's analysis of the prosecutor's remarks is unclear whether the use of the word ridiculous alone would be prejudicial, much less whether, in the absence of the jury being instructed to disregard it, the use would constitute reversible error.

Arguably, the comments White points to in his brief are similar in scope to those in *Douglas* insofar as the prosecutor also referred to White's defense as "victim blaming" and stated "it's like we're dealing with a wild animal." In context, the use of the word ridiculous coupled with these comments appears more analogous to the additional use of the words absurd and ludicrous in *Douglas*. White cites these comments in his brief but does not specifically argue this point; however, the *Douglas'* analysis did focus on the effect of the comments in the context of the closing argument as a whole. See 274 Kan. at 108.

9

The court in *Douglas* found no reversible error despite several other statements the prosecutor made in closing arguments. In addition to calling Douglas' story "ridiculous and absurd and ludicrous," the prosecutor also told the jury:

"'[*I*]*f you believe every word that came out of Mr. Douglas' mouth, then you're pretty naive, because what he said doesn't make any sense. . . .* Mr. Douglas not only *at best, he made up the name L.A., he came up with it, tried to pitch it to you folks, tried to do as best he could with you.*

"'. . . So, without me spending any more time on his story, *which is quite frankly unbelievable,* believe it if you want and find him guilty of felony murder during the course of a sale of marijuana because he set it up. If you believe him, he got the parties together, he participated in that if you believe him. *It's the State's position that you should not believe anything he says.*'

. . . .

"'Defendant's story is unbelievable. It is absolutely, totally and completely unbelievable. Now, once we move past that, and so I don't offend anybody I will move past that.'

"'. . . [I]t is up to you to decide the weight and credit to give any particular witness or any piece of testimony, so you can judge what Mr. Douglas has decided to tell you and judge it for what it is worth. *And I will call it what it is. It's unbelievable. It is unbelievable.* That's what doesn't make any sense.'

. . . .

"'. . . *I submit to you that you shouldn't believe a word out of his mouth.* And the reason you shouldn't believe a word out of his mouth, and believe me folks, if you think that this is the first defendant that got up and said, I didn't do it—.'" *Douglas*, 274 Kan. at 106-07.

Douglas did not object to any of these comments.

White points to no similar comments in his brief. Although *Douglas* does not indicate whether the use of the word ridiculous would constitute reversible error if the jury had not been instructed to disregard it, the Supreme Court's treatment of the above-

10

mentioned comments is highly instructive. The *Douglas* court held the prosecutor's comments about the believability of Douglas' story was an attempt "to show Douglas' version of the events was not practicable under the evidence presented at trial" and found no prejudicial error. 274 Kan. at 107-08.

The prosecutor's comments here could also be seen as attempting to show the jury White's version of the events was not practicable based on the evidence presented at trial. While not the best choice of words, the prosecutor's use of ridiculous does not constitute reversible error. We find *Douglas* is persuasive as it applies to the facts of this case. It was an unnecessary overstatement in attacking White's defense. Prosecutors should always use caution when trying to attack the defendant's theory of defense with strident words. Under the facts of this case, we find the prosecutor's use of the word ridiculous did not prejudice White or deny him a fair trial. Furthermore, we are convinced the use of the word ridiculous by the prosecutor, in light of the entire record, did not affect the outcome of the trial—*i.e.*, there is no reasonable possibility that the use of the word ridiculous under these facts contributed to the verdict.

*The use of PIK Crim. 4th 51.010 was legally correct.*

*Preservation of the issue*

White did not object to the instruction at trial. Therefore, the issue may only be reviewed for clear error. *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013); *State v. Williams*, 295 Kan. 506, 515, 286 P.3d 195 (2012).

*Standard of Review*

The standard of review when addressing challenges to jury instructions is based upon the following analysis:

"'(1) First, the appellate court should consider the reviewability of the issue from both jurisdictional and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

The appellate court uses a two-step process in determining whether the challenged instruction was clearly erroneous. First, the court must consider whether there was any error at all by considering whether the instruction at issue was both legally and factually appropriate by employing an unlimited review of the entire record. Second, if the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

*Discussion*

White argues the jury was improperly instructed by the district court. As we consider this argument, we are reminded of the many times our Supreme Court and this court have stated that district courts are "strongly recommend[ed] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015). White asserts the district court's use of PIK Crim. 4th 51.010 was clearly erroneous. Specifically, White takes issue with the language: "If you have no reasonable doubt as to the claims required to be proved by the State, you *should* find the defendant guilty."

12

White argues the use of the word "should" is legally inaccurate and asserts the word should is an imperative term which directs a verdict in favor of the State, thereby depriving the jury of its inherent power of jury nullification.

*No clear error*

The issue White raises on appeal was recently addressed by another panel of this court in *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (February 18, 2016). The *Jones* panel approved PIK Crim. 4th 51.010 as a proper instruction. Additionally, in *State v. Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5, 372 P.3d 432 (2016), *petition for rev. filed* June 6, 2016, the panel found the use of the word should in the jury instruction did not have the effect of directing a verdict in favor of the State and therefore was not clearly erroneous. 52 Kan. App. 2d at 735-36. Several other panels of this court have also rejected the same argument. See *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* May 23, 2016; *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* April 1, 2016; *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* February 26, 2016.

As *Singleton* pointed out, the word should is less of an imperative than must or will. The word should is advisory, not compulsory. 2016 WL 368083, at *6. The reasoning in *Jones*, *Allen*, and *Singleton* equally apply to this case. The district court's instruction using PIK Crim. 4th 51.010 was legally correct and was not erroneous. It did not negate the jury's right to nullify White's conviction. Therefore, we do not need to proceed to the second step of the analysis.

*K.S.A. 2015 Supp. 21-5415(a)(1) is not unconstitutionally vague.*

There has been no amendment to this statute since July 1, 2011. Therefore, for purposes of this opinion, we will cite to the statute as K.S.A. 2015 Supp. 21-5415(a)(1).

"A void-for-vagueness challenge is based on the due process requirement that a statute's language must '"convey a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice."' *State v. Adams*, 254 Kan. 436, 438, 866 P.2d 1017 (1994) (quoting *City of Wichita v. Wallace*, 246 Kan. 253, 257, 788 P.2d 270 [1990]). A statute must also "'adequately guard [ ] against arbitrary and discriminatory enforcement."' *Bryan*, 259 Kan. at 146 (quoting *Adams*, 254 Kan. at 439). A statute is unconstitutionally vague if it '"forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application."' *Adams*, 254 Kan. at 439 (quoting *State v. Dunn*, 233 Kan. 411, 418 662 P.2d 286 [1983]).

> "'[V]ague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on a ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."' *Rucker*, 267 Kan. at 830." *State v. Taylor*, No. 109,147, 2014 WL 113451, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan. 1052 (2015).

*Preservation of the Issue*

White failed to raise this issue before the district court. On appeal, White argues the language of the statute is unconstitutionally vague and it meets one or more of the

exceptions to the general rule constitutional issues cannot be raised for the first time on appeal. White claims his vagueness argument is a question of law submitted on proved or admitted facts and our consideration of the issue is necessary to prevent the denial of White's fundamental constitutional right to due process. See *State v. Ortega-Cadelan*, 287 Kan. 157, 159, 194 P.3d 1195 (2008); *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967). (Three exceptions to the general rule include: [1] The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; [2] consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and [3] the district court is right for the wrong reason.) We agree with White's argument here and will proceed to address whether K.S.A. 2015 Supp. 21-5415(a)(1) is unconstitutionally vague.

*Standard of Review*

"Determining a statute's constitutionality is a question of law subject to unlimited review. An appellate court presumes statutes are constitutional and must resolve all doubts in favor of a statute's validity. Further, an appellate court must interpret a statute in a manner that renders it constitutional if there is any reasonable construction that will maintain the legislature's apparent intent." *State v. Soto*, 299 Kan. 102, Syl. ¶ 8, 322 P.3d 334 (2014).

*Discussion*

K.S.A. 2015 Supp. 21-5415(a)(1) provides:

"(a) A criminal threat is any threat to:

(1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the

15

risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities."

White argues K.S.A. 2015 Supp. 21-5415(a)(1) is unconstitutionally vague because the use of the word "fear" makes the statute unclear. White asserts the word fear may encompass unreasonable fears or fears unconnected to a threat of violence. A similar argument was rejected by another panel of this court in *Taylor*, 2014 WL 113451, at *6. *Taylor* held the term fear is understood by persons of common intelligence to mean "'an unpleasant emotion caused by the belief that someone or something is dangerous, likely to cause pain, or a threat.' [Citations ommitted.]" 2014 WL 113451, at *6. *Taylor* further found the statute criminalizes a threat to commit violence, which corresponds with the common meaning of the term fear. 2014 WL 113451, at *6.

Another panel of this court held the phrase "with the intent to place another in fear" was not unconstitutionally vague. *State v. Denton*, No. 111,085, 2015 WL 5036669, at *4 (Kan. App. 2015) (unpublished opinion) (citing *Taylor*, 2014 WL 113451, at *6; *State v. Rodriguez*, No. 110,604, 2014 WL 6777430, at *2-4 [Kan. App. 2014] [unpublished opinion], *rev. denied* 302 Kan. 1019 [2015]), *rev. denied* 303 Kan. 1079 (2016). *Rodriguez* found the reaction of the recipient of the threat is irrelevant because the statute plainly focuses on the intent of the defendant to make someone fearful by communicating a threat of violence. 2014 WL 6777430, at *3-4. Similarly, *Taylor* found "[t]he term 'fear' is not dependent on the sensibilities of each individual victim." 2014 WL 113451, at *6. *Denton* found the use of the term fear correlates with the *actus reus*—communicating a threat to commit violence. A person of common intelligence understands criminal liability attaches when the intent of the criminal threat is to induce fear. 2015 WL 5036669, at *5.

There is no requirement in the criminal threat statute that the defendant actually incite fear in the victim or that any such fear be reasonable; the defendant must only

16

intend to place the victim in fear. *Denton*, 2015 WL 5036669, at *6 (citing *Rodriguez*, 2014 WL 6777430, at *3; *Taylor*, 2014 WL 113451, at *6). In other words, the victim's emotional state or response to the defendant's threat, whether reasonable or not, is not a standard for enforcement and is therefore irrelevant. K.S.A. 2015 Supp. 21-5415(a)(1) is not unconstitutionally vague.

The reasoning found in *Denton*, *Rodriguez*, and *Taylor* applies here. The statute is not unconstitutionally vague and reasonably describes conduct a person of common intelligence would understand is prohibited.

*K.S.A. 2015 Supp. 21-5415(a)(1) is not unconstitutionally overbroad.*

*Preservation of the Issue*

Before we consider White's argument K.S.A. 2015 Supp. 21-5415(a)(1) is overbroad, we must determine if White timely raised the issue before the district court. We find White sufficiently touched on the issue before the district court when he challenged the constitutionality of the statute by claiming his statements constituted political speech protected under the First Amendment to the United States Constitution. *Cf. State v. Barnes*, 293 Kan. 240, 255, 262 P.3d 297 (2011) (issues not raised before the district court generally cannot be raised on appeal).

*Standard of Review*

Whether a statute is constitutional is a question of law subject to unlimited review. *Soto*, 299 Kan. at 103.

17

*Discussion*

White claims K.S.A. 2015 Supp. 21-5415(a)(1) is unconstitutionally overbroad, both facially and as applied. White asserts the statute criminalizes constitutionally protected free speech, arguing because the statute does not define the word fear, it prohibits conduct beyond true threats. White's argument is unavailing. As used in the statute, fear refers to a threat to commit violence. See K.S.A. 2015 Supp. 21-5415(a)(1); *Taylor*, 2014 WL 113451, at \*6. Therefore, K.S.A. 2015 Supp. 21-5415(a)(1) only prohibits true threats. See *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d (2003) ("true threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group). K.S.A. 2015 Supp. 21-5415(a)(1) is not unconstitutionally overbroad on its face.

A statute is overbroad if it prohibits or criminalizes constitutionally protected conduct. See *Dissmeyer v. State*, 292 Kan. 37, 43, 249 P.3d 444 (2011). This court presumes statutes are constitutional. *Soto*, 299 Kan. 102, Syl. ¶ 8. As the party attacking the statute, White has the burden of overcoming that presumption. See *State v. Williams*, 299 Kan. 911, 920, 329 P.3d 400 (2014). Moreover, the overbreadth doctrine "should be employed sparingly and only as a last resort." *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005).

It is well established that a successful overbreadth challenge must prove (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional applications from its unconstitutional applications. *Dissmeyer*, 292 Kan. at 40-41 (quoting *Smith*, 279 Kan. at 253). Moreover, courts use a common-sense interpretation when determining what conduct a statute potentially could prohibit and "will not give strained meanings to legislative language through a process of imaginative hypothesizing." *State v. Wilson*,

18

267 Kan. 550, 557, 987 P.2d 1060 (1999). In other words, courts must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation. *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012).

A "true threat" is one of the narrowly limited classes of speech that the First Amendment to the United States Constitution permits a state to ban. The United States Supreme Court has clarified:

> "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. [Citations omitted.] The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' [Citation omitted.]" *Black*, 538 U.S. at 359-60.

White argues that because K.S.A. 2015 Supp. 21-5415(a)(1) does not define the type of intended fear that may result in a criminal conviction or require that fear be reasonable, the statute criminalizes speech that does not convey a true threat. For support, White poses three hypothetical scenarios that would purportedly violate the criminal threat statute: (1) A worker in a haunted house threatening to kill guests as part of the haunted house act; (2) two close friends arguing about an accident and one of them yelling, "I'm going to kill you if you don't pay me back"; and (3) "a mildly upset client may sarcastically tell an attorney that if the attorney sends her one more bill with a mistake on it, she will unleash an army of tiny Martians on the attorney."

White's hypotheticals are not persuasive. In fact, these exact same hypotheticals were explicitly rejected by this court in *Denton*, 2015 WL 5036669, at *7. On its face, the statute is clearly designed to prohibit a limited class of impermissible speech—threats to commit violence, *i.e.*, true threats. See *Black*, 538 U.S. at 359-60. White's hypotheticals

are based on the mistaken assumption that the statute does not require serious expressions of intent to commit violence as a requirement for conviction. There is no reading of K.S.A. 2015 Supp. 21-5415(a)(1) that supports such a conclusion, and White points to no authority concerning an unconstitutional application of the statute.

As discussed earlier, K.S.A. 2015 Supp. 21-5415(a)(1) does not require a definition of how the victim should respond to the threat of violence; the defendant's decision to make the threat of violence triggers criminal liability. K.S.A. 2015 Supp. 21-5415(a)(1) requires the specific intent to induce fear; therefore, the statute protects individuals from a serious expression of an intent to commit unlawful violence, regardless of whether the speaker intended to follow through with the threat. The statute is not unconstitutionally overbroad. *Denton*, 2015 WL 5036669, at *7.

White's as-applied challenge centers on the proposition:  "[A]lthough the State presented evidence that [he] communicated a threat, there was not strong evidence that [he] intended or made that threat in reckless disregard that someone would reasonably fear actual violence." White's argument conflates the legal standard of constitutional overbreadth of a statute with a factual question of his subjective intent in making the statement. Essentially, White argues the statute is overbroad as applied to him because he could not control how the recipients of the threat would perceive and react to it. White's argument is without merit.

White's argument that there was insufficient evidence he intended to place someone in reasonable fear of actual violence or did so with reckless disregard is essentially a question of the sufficiency of the evidence, which is not an issue White raises on appeal. Further, White cites no pertinent authority in support of his argument. An issue not briefed by the appellant is deemed waived and abandoned. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). A point raised incidentally in a brief and not argued therein is also deemed abandoned. *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d

20

399 (2013). Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013). White has failed to support his argument with pertinent authority or otherwise sufficiently explain why his argument is sound; therefore, the issue is deemed waived and abandoned.

CONCLUSION

We find no merit in White's claims of error. The prosecutor's closing argument using the word "ridiculous" as a comment to White's theory of defense did not prejudice White. The district court's use of PIK Crim. 4th 51.010 to instruct the jury was legally proper, and the inclusion of the word "should" in the instruction did not direct the jury to a verdict in favor of the State.

White's claim K.S.A. 2015 Supp. 21-5415(a)(1) is unconstitutionally vague because it uses the word "fear" lacks support in the law. The word fear is a commonly understood word capable of easy comprehension. Finally, White's claim K.S.A. 2015 Supp. 21-5415(a)(1) is overbroad and unconstitutional is without merit. K.S.A. 2015 Supp. 21-5415(a)(1) constitutionally restricts threats to commit violence, *i.e.*, true threats. We affirm the district court.

Affirmed.