NOT DESIGNATED FOR PUBLICATION

No. 115,114

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BEAU M. BOSTIC,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed April 14, 2017.
Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before SCHROEDER, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*:  Beau M. Bostic appeals his jury conviction and sentence for aggravated battery raising three claims of error. Bostic argues:  (1) The district court improperly admitted suicidal text messages he sent to his victim shortly after the incident; (2) the district court improperly instructed the jury on the burden of proof thereby depriving the jury of its inherent power of jury nullification; and (3) cumulative error deprived him of the right to a fair trial. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of December 8, 2014, Bostic's victim, Brandi Sims, picked him up from work. They drove to Bostic's house where he changed clothes, then they drove to a McDonald's to eat. While in the restaurant, Bostic began drinking a beer he brought with him. Sims was unhappy Bostic was drinking beer in a public place. The couple began arguing, but Bostic ignored Sims request to stop. They continued to argue after leaving the restaurant and drove to a liquor store. After leaving the liquor store, the couple drove to their friend Dennis Burns' residence.

After arriving at Burns' residence the couple continued to argue. Sims threatened to tell Bostic's father where Bostic kept his cocaine. Sims became frustrated and decided to leave; however, Bostic got on the ground and put his head behind Sims' vehicle's rear passenger tire preventing her from leaving. Sims parked the vehicle and approached Bostic. He got up and stood on the other side of the vehicle. The couple began arguing again, and Bostic threw a beer can at Sims striking her in the temple. Bostic told Sims "I hate you," came around the vehicle, and attacked her, grabbing her by the neck and forcing her to the ground. Once she was on the ground, Bostic kneeled over Sims and choked her. Sims panicked and struggled to breathe but was able to press the panic button on her car key setting off the vehicle alarm. When the alarm sounded, Bostic got off Sims She stood up and got in her vehicle, but Bostic held the door open. Sims kicked Bostic, shut the door, drove off, and called 911.

Deputy Jacki Cinotto made contact with Sims shortly after the incident. Sims was visibly distraught, and Deputy Cinotto noticed discoloration on her neck. Sims gave a statement to Deputy Cinotto and another officer took photographs documenting her injuries. Approximately 1 hour after the incident, Sims began receiving text messages from Bostic. Bostic told Sims he would commit suicide rather than go to jail. Sims was alarmed and called 911, hoping police would locate Bostic before he harmed himself.

Deputy Joseph Slaughter was dispatched to check on Bostic. Bostic acknowledged sending the text messages but told Deputy Slaughter he did not actually intend to hurt himself; rather, he was trying to "mess with [Sims'] head." Bostic told Deputy Slaughter Sims' previous boyfriend had committed suicide and thought the text messages would upset her. Ultimately, Deputy Slaughter arrested Bostic.

Bostic was charged with one count of aggravated battery and one count of misdemeanor battery. At trial, Bostic testified Sims never got out of the vehicle at Burns' residence. Bostic claimed he exited the vehicle and Sims told him she was going to leave him there. He testified that Sims kicked him while he was standing by the driver's door. Bostic denied choking Sims or forcing her to the ground and claimed the only time he touched her was when he grabbed a bottle of liquor from Sims' hands. Bostic also denied throwing a beer can at Sims, instead claiming he threw it at her vehicle as she drove away.

Burns testified on Bostic's behalf stating that he went outside after hearing a vehicle door shut and saw Bostic standing next to the vehicle with Sims in the driver's seat kicking Bostic in the shin and telling him to get away. Burns testified that he never saw Sims on the ground, never saw Bostic on top of her, and never heard the vehicle alarm. Burns claimed he approached Bostic and told him it was not worth it and Bostic should just stay at the house with him. Bostic then stepped away from the vehicle and Sims drove away.

The jury convicted Bostic of aggravated battery but acquitted him of misdemeanor battery. Bostic was sentenced to 34 months' imprisonment. Bostic timely filed notice of appeal.

## BOSTIC'S TEXT MESSAGES TO SIMS WERE PROPERLY ADMITTED

Prior to trial, Bostic argued the suicidal text messages should not be admitted. He asserted they were irrelevant because they did not reference the crimes charged, and he further argued they were unduly prejudicial. The State acknowledged the text messages were sent after Bostic left the scene but argued they demonstrated his state of mind and showed an ongoing attempt to terrorize Sims. The district court ruled the text messages were admissible, finding they were "part and parcel with the incident," and explained why an officer made contact with Bostic.

Bostic renewed his objection at trial, which the district court overruled. Sims testified Bostic was aware one of her previous boyfriends had committed suicide and it was a "touchy subject" for her. Sims testified she called 911 after receiving the text messages hoping officers would find Bostic "before he tried to do something like [commit suicide]." Pictures of the text messages were also admitted at trial. Bostic wrote: "No jail for me[;] how u gonna put a dead guy in jail[?]" Bostic told Sims she would have two suicides on her conscience, saying he would be found with a belt around his neck and would be naked "for a more dramatic effect."

Bostic argues the text messages were improperly admitted, asserting they are irrelevant and highly prejudicial. The State argues the text messages are relevant and their probative value was not substantially outweighed by a risk of undue prejudice. The State is correct.

Generally, all relevant evidence is admissible unless prohibited by statute. See K.S.A. 60-407(f). "'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b).

"Relevant evidence must be material and probative. Material evidence is evidence that '"has a legitimate and effective bearing on the decision of the case and is in dispute."' *State v. Garcia*, 285 Kan. 1, 14, 169 P.3d 1069 (2007). This court reviews de novo whether evidence is material. [*State v.*] *Reid*, 286 Kan. [494,] 505[, 186 P.3d 713 (2008)]. Probative evidence is evidence that furnishes, establishes, or contributes toward proof. *State v. Martinez*, 290 Kan. 992, 1009, 236 P.3d 481 (2010). This court reviews the probative element of relevancy under an abuse of discretion standard." *State v. Preston*, 294 Kan. 27, 32, 272 P.3d 1275 (2012).

"'"The determination of relevancy is a matter of logic and experience, not a matter of law. [Citations omitted.]"' *State v. Gardner*, 264 Kan. 95, 104, 955 P.2d 1199 (1998). To establish relevancy to the fact of the crimes charged, this court has stated there must be 'some natural or logical connection between [the witness'] testimony and the inference or result [the witness'] testimony is designed to establish.' *State v. Donesay*, 265 Kan. 60, 85, 959 P.2d 862 (1998)." *State v. Leitner*, 272 Kan. 398, 414-15, 34 P.3d 42 (2001).

The State argues the text messages are material as demonstrating consciousness of guilt. In support of its argument, the State cites to *State v. Huddleston*, 298 Kan. 941, 960-61, 318 P.3d 140 (2014), *State v. Phillips*, 295 Kan. 929, 949, 287 P.3d 245 (2012), and *State v. Dixon*, 289 Kan. 46, 70, 209 P.3d 675 (2009), all holding consciousness of guilt can be material. The State also argues the text messages may be probative of intent (citing *State v. Wilkins*, 269 Kan. 256, 267, 7 P.3d 252 [2000] [intent is a mental state which may be determined based on reasonable inferences from the surrounding circumstances]). Additionally, the State asserts the text messages are probative of the relationship between Bostic and Sims.

Here, the jury was asked to make a special finding as to whether Bostic committed an act of domestic violence. Accordingly, the jury instructions required the jury to determine the nature of Bostic and Sims' relationship. The text messages and Sims' testimony regarding the same established she and Bostic were in a dating relationship.

Further, as the district court found, the text messages were "part and parcel with the incident," providing context by explaining why the officer made contact with Bostic. Moreover, Sims and Bostic provided significantly different accounts of the incident. Bostic explicitly denied committing any violent acts against Sims. However, Bostic's reference to jail shows consciousness of guilt. The text messages are probative in reconciling the conflicting testimony.

The text messages are material and probative and they are, therefore, relevant. However, a trial court has discretion to exclude relevant evidence when the court finds its probative value is substantially outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. An appellate court reviews any such determination for an abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). An abuse of discretion occurs when a judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law; or (3) based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Bostic argues the "texts did very little, if anything, to further the State's case, except to paint Mr. Bostic in a particularly unflattering light." Bostic's argument is unavailing in light of the probative value of the text messages. The district court did not abuse its discretion.

Even assuming the text messages should not have been admitted, the error is harmless. The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2016 Supp. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). However, if the error implicates a constitutional right, its effect must be assessed under the constitutional harmless error standard—whether the party benefiting from the error proves beyond a reasonable doubt the error would not or did not affect the outcome of the trial in light of the entire record. *State v. Santos-Vega*, 299 Kan. 11, 24, 321 P.3d 1 (2014). Bostic alleges both constitutional and nonconstitutional error. Accordingly, this

court first reviews his claim under the constitutional harmless error standard. *State v. Logsdon*, 304 Kan. 3, 40, 371 P.3d 836 (2016).

Even without the text messages, the evidence supporting Bostic's aggravated battery conviction was more than sufficient. Bostic has not contested the sufficiency of the evidence and even appears to concede the point. Sims testified Bostic became angry as they argued and applied pressure to her neck to the point she could not breathe or speak. Sims testified she had red marks on her neck as well as difficulty swallowing which became worse in the days following the incident. Sims further indicated she suffered bruising on her back and shoulders. Sims' injuries were corroborated with photographic evidence as well as testimony from Deputy Cinotto and Sims' coworker, Stevie Young. Sims' testimony at trial was consistent with her statements to Deputy Cinotto shortly after the incident. The evidence was more than sufficient to prove all the elements of aggravated battery.

In light of the evidence at trial, there is no reasonable probability the alleged error contributed to the verdict. It is harmless beyond a reasonable doubt. Thus, Bostic's claim fails under the constitutional harmless error standard. See *Longstaff*, 296 Kan. at 896 (erroneous admission of evidence held harmless where victim's testimony corroborated by physical evidence); *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (constitutional error is harmless beyond a reasonable doubt where there is no reasonable probability it contributed to the verdict). Further, because there is no reasonable probability the alleged error contributed to the verdict, Bostic's substantial rights were not prejudiced. Accordingly, his claim also fails under the nonconstitutional harmless error standard. See K.S.A. 2016 Supp. 60-261; *Longstaff*, 296 Kan. at 895-96.

Bostic argues the jury was improperly instructed by the district court. He asserts the district court's use of PIK Crim. 4th 51.010 was erroneous. Specifically, Bostic takes issue with the language: "If you have no reasonable doubt as to the claims required to be proved by the State, you should find the defendant guilty." He argues the use of the word "should" is legally inaccurate, asserting should is an imperative term directing a verdict in favor of the State, thereby depriving the jury of its inherent power of jury nullification.

The standard of review when addressing challenges to jury instructions is based upon the following:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdictional and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

At trial, Bostic objected to the district court's use of the instruction, arguing the word "may" was more appropriate than should. The district court overruled his objection. Since the issue was properly preserved, this court next considers whether the instruction was legally appropriate. See 301 Kan. at 876. Here, the use of PIK Crim. 4th 51.010 was legally appropriate. Bostic's claim fails. To begin with, Kansas appellate courts have interpreted the words may and should as directory. See *Fischer v. State*, 296 Kan. 808, 822-24, 295 P.3d 560 (2013) (use of the word may gave the district court discretion to decide whether a defendant appears in person or by telephone for a K.S.A. 60-1507

evidentiary hearing); *In re D.D.M.*, 291 Kan. 883, 891, 249 P.3d 5 (2011) (use of the word may connotes the district court has discretion). In other words, modifying the jury instructions as Bostic suggested would have no real effect on their meaning.

Bostic's argument was recently rejected by another panel of this court in *State v. White*, 53 Kan. App. 2d 44, 53-54, 384 P.3d 13 (2016), *petition for rev. filed* November 7, 2016. *White* held the "word should is less of an imperative than must or will. The word should is advisory, not compulsory." 53 Kan. App. 2d at 54. As *White* noted, Kansas appellate courts have consistently stated "district courts are 'strongly recommend[ed] to use PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions.' *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015)." 53 Kan. App. 2d at 53. Unless the particular facts of a case require modification of the PIK instructions they should be followed. *Dixon*, 289 Kan. at 67. Bostic does not argue the particular facts of his case warranted modification of the PIK instructions, nor does the record reflect any particular facts warranting the same. Accordingly, it was appropriate for the district court to use the PIK instructions. See *Barber*, 302 Kan. at 377-78; *Dixon*, 289 Kan. at 67; *White*, 53 Kan. App. at 53-54.

Several other panels of this court have also rejected Bostic's argument. See *State v. Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5, 372 P.3d 432 (2016), *petition for rev. filed* June 6, 2016; *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* May 23, 2016; *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016), *petition for rev. filed* April 1, 2016; *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App. 2016) (unpublished opinion), *rev. denied* 305 Kan. ___ (December 21, 2016); *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2016).

Bostic acknowledges this court's ruling in *Singleton* is adverse to his position but argues it was wrongly decided. Bostic asserts the word should is not permissive in the context of the PIK instructions. Specifically, Bostic points to PIK Crim. 4th 50.070, stating: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded."

Bostic also cites to PIK Crim. 4th 50.050, stating: "In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, admissions or stipulations of the parties, and any admitted exhibits. You must disregard any testimony or exhibit which I did not admit into evidence." Further, Bostic points to PIK Crim. 4th 51.040—the jury "should give separate consideration to each defendant" in a multi-defendant case. Finally, Bostic cites to PIK Crim. 4th 51.050, stating: "The defendant raises *describe the defense claimed* as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant."

These instructions actually undermine Bostic's argument. They tell the jury what it *should consider* and what it *must disregard*. They do not *affirmatively* tell the jury it *must consider* anything; therefore, they are consistent with the principle of jury nullification— a jury may choose to *ignore* facts and law to acquit a defendant. See *State v. Naputi*, 293 Kan. 55, 65, 260 P.3d 86 (2011) (jury nullification is the power of the jury to *ignore* the rule of law in acquitting a defendant); *State v. Osborn*, 211 Kan. 248, 255, 505 P.2d 742 (1972) (doctrine of jury nullification "'preserves the power of the jury to return a verdict in the teeth of the law and the facts'" [quoting Wright, 2 Federal Practice and Procedure: Criminal, Chapter 7, § 512, p. 364]).

10

Further, Bostic's argument that the "word 'should' is simpl[y] [the] past tense of the word 'shall'" and is therefore compulsory is undercut by multiple decisions of our Supreme Court. See *Ambrosier v. Brownback*, 304 Kan. 907, 912-15, 375 P.3d 1007 (2016) (shall can be interpreted as either mandatory or directory); *State v. McDaniel*, 292 Kan. 443, 446, 254 P.3d 534 (2011) (agreeing with Kansas Court of Appeals' holding in *State v. Bryant*, 37 Kan. App. 2d 924, 930, 163 P.3d 325 [2007], finding that the word shall was directory rather than mandatory as used in K.S.A. 22-3424[d]).

This court's holdings in *White*, *Allen*, *Cuellar*, *Hastings*, *Singleton*, and *Jones* are sound and should be applied here. Because the instruction was legally appropriate, this court need not proceed any further with the analysis. See *Woods*, 301 Kan. at 876.

NO CUMULATIVE ERROR

Cumulative error occurs when the totality of the circumstances establishes the defendant was substantially prejudiced by cumulative error and was denied a fair trial. In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record. It must consider how the trial judge dealt with the errors as they arose, particularly the nature and number of errors and their interrelationship, if any, and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). The court will find no cumulative error when the record fails to support the errors the defendant raises on appeal. *Marshall*, 303 Kan. at 451. Here, Bostic has not established any point of error; therefore, cumulative error does not apply. See 303 Kan. at 451.

Affirmed.