NOT DESIGNATED FOR PUBLICATION

No. 120,094

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MAJEED ABDUL SPANTA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed August 2, 2019.
Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MALONE, J., and STEVEN E. JOHNSON, District Judge, assigned.


PER CURIAM: Majeed Abdul Spanta appeals from the district court's revocation of his probation and imposition of his underlying sentence without first imposing an intermediate sanction. On appeal, Spanta argues that the district court erred when it found that he committed a new crime—felony criminal threat in violation of K.S.A. 2018 Supp. 21-5415(a)(1)—while on probation. Moreover, he argues that the district court's findings lacked sufficient particularity to properly invoke the public safety exception to the intermediate sanctions requirement. For the reasons set forth in this opinion, we conclude

1

that the district court did not err in revoking Spanta's probation or in requiring him to serve his underlying sentence. Thus, we affirm.

FACTS

On July 30, 2014, Spanta entered into a plea agreement in which he agreed to plead guilty to one count of identity theft in exchange for the State dropping a second identity theft charge and a theft charge. The district court accepted Spanta's plea and subsequently sentenced him to 15 months of incarceration, suspended to probation for 18 months. The district court also imposed restitution of $1,500.

On November 24, 2015, the State filed a motion to revoke Spanta's probation in this case. In its motion, the State alleged that Spanta violated the terms of his probation by committing a new crime. Specifically, the State asserted that on November 18, 2015, Spanta was charged in Johnson County, Kansas with criminal threat in Johnson County Case No. 15CR2824.

On January 21, 2016, the district court held a preliminary hearing in case No. 15CR2824. At the hearing, the district court also considered the motion to revoke probation filed by the State in this case. The State called Kelly Hogan, the Service Experience Manager at Nordstrom in Overland Park, as a witness. Hogan testified to the following:

On September 23, 2015, the store manager forwarded information about a customer transaction in which Spanta had entered the store to return a watch without a receipt. Because Spanta lacked a receipt, the store manager would only exchange the watch. Spanta received a less valuable watch in the exchange and the balance was refunded to him on a prepaid debit card.

2

The next day, Spanta returned to the store and spoke with Hogan. He complained that the refunded amount could not "be released onto the [prepaid] debit card" without a proof of purchase. Spanta spoke on the phone with the bank associated with the prepaid debit card for some time and seemed frustrated. He told another store employee that he was going to finish other errands and then return to the Nordstrom location to finish the refund.

The loss prevention officer from the Nordstrom Rack across the street then phoned Hogan and notified her that Spanta was at that location. Hogan decided to void the transaction from the day before and to provide Spanta with a cash refund. Upon returning to the Nordstrom store, Spanta agreed to this arrangement. As he began to leave the store, Spanta commented that he was happy with Hogan's service, but was generally "really pissed because it took . . . 16 hours with the bank on the phone . . . and that someone was going to die over this, and [that] he was going to shoot someone."

Hogan attempted to calm Spanta down, and he again stated that "no, someone is going to die over this, I'm going to shoot someone." According to Hogan, this was a "matter of fact statement" that "alarmed [her] and made [her] think that maybe someone should know about this." Hogan then spoke with the loss prevention officer, and he notified authorities.

Based on Hogan's testimony, the district court bound Spanta over for trial in Case No. 15CR2824. The district court also found by a preponderance of the evidence that Spanta had committed a new criminal offense and revoked his probation. Further, the district court noted that "this threat was made twice [and] it was made with specificity as to how it was going to be carried out." The district court also stated that Spanta's probation could be revoked under the public safety exception based on the evidence presented. Ultimately, the district court ordered that Spanta serve his underlying sentence.

Thereafter, Spanta appealed to this court. He later filed a separate appeal following his conviction in Case No. 15CR2824, which is also pending before this court. However, this opinion only addresses issues relating to his probation revocation and does not address the issues presented in that case.

ANALYSIS

On appeal, Spanta contends that the district court erred in revoking his probation and bypassing intermediate sanctions. Spanta argues that the district court erroneously invoked the new crime exception when it repealed his probation. He further argues that the record contained insufficient evidence that his "comments were meant to scare Hogan." In response, the State contends that the district court's finding that Spanta committed a new crime was supported by substantial competent evidence. Hence, the State argues that pursuant to K.S.A. 2018 Supp. 22-3716(c)(8), the district court acted within its discretion to bypass intermediate sanctions and remand Spanta to serve the remainder of his underlying sentence.

Under K.S.A. 2018 Supp. 22-3716(c)(8)(a), to revoke a defendant's probation and bypass intermediate sanctions, the district court must find that the defendant committed a new crime by a preponderance of the evidence. See *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). We review the factual findings of the district court for substantial competent evidence. *State v. Miller*, 293 Kan. 535, 547, 264 P.3d 461 (2011). "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018). To the extent that the issue presented involves the interpretation of sentencing statutes, our review is unlimited. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018).

K.S.A. 2018 Supp. 22-3716(a) provides in relevant part:

4

"(a) At any time during probation . . . the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of release or assignment, a notice to appear to answer to a charge of violation or a violation of the defendant's nonprison sanction. The notice shall be personally served upon the defendant. . . . Any court services officer or community correctional services officer may arrest the defendant without a warrant or may deputize any other officer with power of arrest to do so by giving the officer a written or verbal statement setting forth that the defendant has, in the judgment of the court services officer or community correctional services officer, violated the conditions of the defendant's release or a nonprison sanction. . . . "

Although a district court must generally impose an intermediate sanction prior to sending a probationer to prison for the original underlying sentence, K.S.A. 2018 Supp. 22-3716(c)(1) states that the court is not required to do so if the probationer's original crime was a felony and the probationer commits a new crime while on probation:

"(c)(1) Except as otherwise provided, if the original crime of conviction was a felony . . . and a violation is established, the court may impose the following sanctions:

. . . .

(8)(A) If the offender commits a new felony or misdemeanor while the offender is on probation . . . the court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D)."

Here, the State charged Spanta with criminal threat, a severity level 9 person felony, on November 18, 2015, while Spanta was on probation in this case. According to K.S.A. 2018 Supp. 21-5415(a)(1), a criminal threat is a threat meant to

"[c]ommit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place

5

of assembly or facility of transportation, or reckless disregard of the risk of causing such fear or evacuation, lockdown or disruption in regular, ongoing activities."

Spanta candidly recognizes that under the criminal threat statute, "the fear of the victim is irrelevant" and that "[t]he fear that matters is that the defendant made the threat with the intent to cause fear." See *State v. White*, 53 Kan. App. 2d 44, 56, 384 P.3d 13 (2016) ("There is no requirement in the criminal threat statute that the defendant actually incite fear in the victim or that any such fear be reasonable; the defendant must only intend to place the victim in fear."); see also *State v. Hunt*, No. 112,823, 2015 WL 4366555, at *3 (Kan. App. 2015). Nevertheless, Spanta argues that the district court did not have sufficient evidence upon which to conclude that he had committed a new crime. The State, however, argues that even though Spanta's words did not directly threaten Hogan, there was "[a]budant evidence" to support the district court's determination under a preponderance of the evidence standard that Spanta had committed the crime of criminal threat.

At the hearing, Hogan testified regarding her conversation with Spanta at Nordstrom on September 24, 2015:

"A: He said that he was very happy that we ended up taking care of him.

"He thanked me and as soon as he was walking away from the counter, he stated that he was still really pissed because it took him 16 hours with the bank on the phone, he spent a lot of time trying to render this, and that someone was going to die over this, and he was going to shoot someone.

"Q: Okay. And there were two separate statements; correct?

. . . .

"A: He said that he was very happy with me and he wasn't angry with me, but that he was still angry that he had to spend so much time trying to get his money back and someone was going to die over it.

"Q: So then did you try to calm him down?

6

"A: I just say, hey, you know, there is no need for that and we need to be really careful about what you say nowadays and you got your money back, let's just forget about it, go enjoy your day.

"And he said again, no, someone is going to die over this, I'm going to shoot someone.

"Q: What was his demeanor like that caused you such concern?

"A: You know, I've dealt with a lot of customers in the last ten-plus years and usually if they're just blowing off steam, it's more of a, you know, they're openly angry.

"It was not more of an angry, but more of a matter of fact statement, which kind of alarmed me and made me think that maybe someone should know about this.

"Q: And when you say 'kind of alarm[ed]' you, did it alarm you?

"A: It did alarm me, yes. . . . And in conjunction with the fact that he was making other associates uncomfortable. Something just didn't seem right.

"Q: So he said that someone was going to die over this and that he was going to shoot somebody?

"A: Yes."

On cross-examination, Hogan testified:

"Q: And you reported it because obviously, you know, it's a concern, but not because you were personally in fear in any way?

"A: I feel like maybe—I mean, if you want to know my exact thoughts, not that he would do something to me personally, but maybe an associate in our store that had not been able to take care of him earlier, the woman at the bank was really upset about the way he was speaking to her, and I ultimately did not want to lose sleep over not contacting someone about the way he made me feel when he was in the store."

Based on Hogan's testimony, the district court found:

"She was concerned enough about this statement to even caution the defendant and say something along the lines of, you really shouldn't say something like that, you have to be careful these days about what you say, and the defendant then repeated the same threat a second time to the same person, no, someone is going to die over this and I'm going to shoot someone."

7

The district court concluded:

> "The fact that it was done matter of factly in sort of a cold and calculating manner, as opposed to someone who was in the rage of the moment, I think adds to the legitimacy of this threat that was done either to scare Ms. Hogan or done in reckless disregard of scaring her, and the Court finds by a preponderance of the evidence that the defendant's probation has been violated."

In deciding whether to require Spanta to serve his underlying sentence, the district court reiterated, "by the preponderance of the evidence, the Court does believe the defendant committed the crime of criminal threat on or about September 24th of 2015." The district court again noted its concern that even after Hogan warned Spanta about his words, he "repeated it almost word-for-word a second time, as opposed to saying, oh, my gosh, what was I thinking, I never meant to say that, instead, again, in a very matter of fact manner, repeats the same threat." Based on our review of the record, we conclude that there was substantial competent evidence upon which the district court could reasonably conclude it was more likely than not that Spanta committed the new offense of criminal threat.

Because the district court appropriately found that Spanta committed a new crime, the district court had the discretion to order him to serve his underlying sentence. See *State v. Skolaut*, 286 Kan. 219, 227-28, 182 P.3d 1231 (2008). Here, Spanta does not argue abuse of discretion nor do we find an abuse of discretion based on our review of the record. Rather, we find that the district court's decision was reasonable under the circumstances presented. Finally, in light of our conclusion on the issue of whether Spanta committed a new crime, it is unnecessary to address the district court's additional finding that Spanta posed a public safety risk. We, therefore, affirm the decision of the district court.

Affirmed.

8