No. 118,380

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERI LYNN JOHNSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

Courts must presume the constitutionality of a statute and resolve all doubts in the favor of validity.

2.

The term "other person in a position of authority" in K.S.A. 2015 Supp. 21-5512(a)(9) is not unconstitutionally vague.

3.

The party claiming an error occurred has the burden of designating a record affirmatively showing prejudicial error. Without such a record, an appellate court presumes the action of the trial court was proper.

4.

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the

1

defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.

5.

An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute not readily found in its words.

6.

Ultimately, the courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation.

7.

K.S.A. 2015 Supp. 21-5512(a)(9) defines unlawful sexual relations as "engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy with a person who is not married to the offender if . . . the offender is a teacher or other person in a position of authority and the person with whom the offender is engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy is a person 16 years of age or older who is a student enrolled at the school where the offender is employed."

8.

K.S.A. 2015 Supp. 21-5512(d)(9) defines a teacher to include "teachers, coaches, supervisors, principals, superintendents and any other professional employee in any public or private school offering any of grades kindergarten through 12."

9.

A paraprofessional educator assigned to a school is a person in a position of authority as set out in K.S.A. 2015 Supp. 21-5512(a)(9).

10.

Under K.S.A. 2015 Supp. 21-5510(a)(1), sexual exploitation of a child by enticing a child to engage in sexually explicit conduct with the intent to promote any performance is not an alternative means crime.

11.

The subpoints in the definition subparagraph of K.S.A. 2015 Supp. 21-5510(d)(2)(A) and (B) describe options under the definition of "promoting" and do not create an alternative means crime requiring super-sufficiency of the evidence.

12.

K.S.A. 2015 Supp. 21-6401(f)(2) defines "material" as "any tangible thing which is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound or other manner."

13.

"Material" as used in K.SA. 2015 Supp. 21-6401(f)(2) includes digital media shared by sending or transmitting it to another person.

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed June 21, 2019. Affirmed.

*Clayton J. Perkins*, of Capital Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER, J., and STUTZMAN, S.J.

SCHROEDER, J.: Teri Lynn Johnson appeals her jury convictions for unlawful sexual relations, sexual exploitation of a child, and promoting obscenity to a minor. She challenges the sufficiency of the evidence under each count and also claims K.S.A. 2015 Supp. 21-5512(a)(9) as applied is unconstitutionally vague as it fails to give notice of who is covered by the law and does not support her conviction for unlawful sexual relations. She also complains K.S.A. 2015 Supp. 21-5510(a)(1) requires super-sufficiency of the evidence, claiming it is an alternative means crime. The jury found Johnson guilty as charged stemming from her sexually oriented relationship with K.E., a minor. The record shows the court ordered K.E. to attend school where Johnson worked as a classroom paraprofessional. Their relationship began with flirtations in school. Johnson exchanged sexually explicit communications with K.E. on social media, resulting in Johnson ultimately going to K.E.'s home where they engaged in sexual intercourse. In a light most favorable to the State, the evidence presented supports Johnson's convictions. K.S.A. 2015 Supp. 21-5512(a)(9) is not unconstitutionally vague, and K.S.A. 2015 Supp. 21-5510(a)(1) is not an alternative means crime. We affirm.

FACTS

*Johnson's job and duties*

Johnson worked as a paraprofessional educator for U.S.D. 497. She was assigned as a paraeducator to the Douglas County Detention Center in what is commonly referred to as the Day School at the Juvenile Detention Center (JDC). Johnson worked at the Day School under the supervision of a licensed teacher. The essential functions of Johnson's position included adapting classroom activities, administering discipline, conferring with teachers, participating in team meetings to assist in evaluating student progress, implementing academic instruction, implementing behavior plans, and monitoring

4

classrooms and students to ensure their safety and welfare. Paraeducators had supervision responsibilities and were also responsible for leading, guiding, and coordinating with others, including the students. If needed, Johnson would also "take over" and substitute for various teachers at the Day School.

*K.E.'s enrollment and status as a student*

K.E. was a student enrolled in the 12th grade in the Lawrence Public School system during the 2015-2016 school year. He was court ordered to attend school at the JDC that year.

*The relationship between Johnson and K.E.*

K.E. testified he found Johnson attractive and would joke with his friends about who would have sex with her first. He would flirt with Johnson a couple of times a week by staring at her breasts and deliberately getting caught by her to see how she would react.

A relationship developed and Johnson began communicating with K.E. outside of school using two social media applications: Facebook Messenger and Snapchat. Johnson told K.E. in their first exchange on Facebook she could be fired if their contacts were discovered. They switched to using Snapchat to send pictures, videos, and text messages to each other. K.E. testified they favored Snapchat because it deletes messages, pictures, and videos after a user views them. However, a Snapchat user can actively save images sent to the user. If saved by the recipient, the sender is sent a notification explaining the last sent item was saved by the recipient. K.E. testified he initially saved messages exchanged with Johnson through the chat function, but he "unsaved" them because he did not want anyone to see them.

5

K.E. testified they started sending pictures early in their communications and that "sex was already on my mind." He also testified that they discussed the age of consent in Kansas. Johnson was concerned because K.E. was not yet 18 years old. He searched on Google for the age of consent in Kansas, determined it was 16, and told Johnson he was over the "age of statutory rape."

Johnson went to K.E.'s house on the Saturday before Thanksgiving, and the two had sexual intercourse one time in his bedroom.

After having sex, K.E. and Johnson continued to communicate on Snapchat. They discussed their sexual encounter, having sex again, and mutually agreed to not tell anyone. Over the course of the relationship, Johnson sent K.E. approximately 20 pictures over Snapchat, and "all but like four or five" included pictures of her breasts. The rest included images of things such as lingerie and her vagina. K.E. also received pictures and at least two videos from Johnson over Facebook, one of her "rubbing her breasts and then playing with her vagina and [in] the other one she was in the shower playing with her vagina."

K.E. testified he requested most of the photographs and videos Johnson sent to him; however, Johnson also sent him videos and pictures he had not requested. He also testified prior to having sex, Johnson asked him for a picture of his penis and he sent it. He did not recall her asking him for a video of himself. At trial, K.E. identified a video of himself masturbating. He did not recall sending the video to Johnson. This video of K.E. masturbating, as well as other images of an erect penis—believed by police, in context, to be of K.E.—were located on Johnson's cellphone.

Johnson told K.E. throughout all of their communications to not save the content. K.E. testified "[i]f it involved naked pictures I saved it."

*Report and criminal investigation*

K.E. disclosed his relationship with Johnson to his father. His father told K.E.'s mother, and she contacted law enforcement. Law enforcement interviewed K.E. Then detectives went to the JDC and requested Johnson accompany them to the police department for an interview. Johnson did not testify at her trial, but the court admitted a video recording of her interview which was played for the jury. At the end of her police interview, Johnson provided a written statement, which was also admitted at her trial. Throughout the course of the investigation, the detectives reviewed Facebook and Snapchat records and phone reports downloaded from K.E.'s and Johnson's cellphones. These downloaded records included some restored information previously deleted by Johnson and K.E.

As the interview progressed, Johnson admitted she had exchanged photos with K.E., first claiming she had done so by accident. After the police told her they could retrieve even some deleted information, Johnson admitted she sent K.E. images. At first, she claimed she was not unclothed but then acknowledged she intentionally sent K.E. pictures of her breasts and vagina. She told police their contacts were exclusively messaging.

Later in the interview, she acknowledged she went to K.E.'s house but claimed they only talked. When asked if her DNA would be on K.E.'s bed, Johnson replied, "I guess you know?" Johnson then admitted she had sexual intercourse with K.E. with K.E.'s penis penetrating her vagina, and K.E. also performed oral sex on her.

Johnson also admitted she and K.E. exchanged videos involving both of them masturbating. Johnson acknowledged K.E. sent her a picture of his penis.

7

*Trial and sentencing*

The State charged Johnson with one count of unlawful sexual relations, a severity level 5 person felony; one count of sexual exploitation of a child, also a severity level 5 person felony; and one count of promoting obscenity to a minor, a class A nonperson misdemeanor. The jury convicted her on all three charges.

Johnson moved for a downward dispositional departure, or in the alternative, a downward durational departure. After hearing the evidence, a statement from K.E.'s mother, and arguments of counsel, the district court continued the sentencing to review the records and caselaw citations. In ruling on the motion, the district court stated the following:

- Johnson was in a position of authority;
- K.E. was a student at the school where Johnson was a paraprofessional educator;
- Johnson had engaged in a course of conduct;
- The relationship grew over time from inappropriate discussions in the classroom to secretive communications on Facebook and Snapchat;
- Johnson violated the educator/student fiduciary relationship; and
- There were insufficient compelling reasons to grant a departure.

Therefore, the district court denied Johnson's motion.

The district court then sentenced Johnson to the standard sentence of 32 months with the Department of Corrections for unlawful sexual relations, 32 months for sexual exploitation of a child, and 12 months for promoting obscenity to a minor, all to run

concurrent to each other with 24 months of postrelease supervision. Finally Johnson was ordered to register under the Kansas Offender Registration Act for 25 years.

ANALYSIS

*Is the use of "other person in a position of authority" unconstitutionally vague as set out in K.S.A. 2015 Supp. 21-5512(a)(9)?*

K.S.A. 2015 Supp. 21-5512(a)(9) under these facts prohibits consensual sexual intercourse, lewd fondling or touching, or sodomy with a person who is not married to the offender when the offender is a teacher or *other person in a position of authority* employed at a school where the child is enrolled.

Johnson argues K.S.A. 2015 Supp. 21-5512(a)(9) is unconstitutionally vague when applying the term "other person in a position of authority." Whether a statute is unconstitutionally vague is a question of law, and this court's review is unlimited. This court must presume the constitutionality of a statute and resolve all doubts in favor of its validity. *State v. Whitesell,* 270 Kan. 259, 268, 13 P.3d 887 (2000).

Interpretation of a statute is also a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to

9

construe the legislature's intent. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony, if possible. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015).

### A. Preservation

Johnson acknowledges she raises this issue for the first time on appeal. Issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Constitutional grounds for reversal asserted for the first time on appeal are also not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

However, consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, so we may address Johnson's claim. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014); see also *State v. White*, 53 Kan. App. 2d 44, 55, 384 P.3d 13 (2016), *rev. denied* 306 Kan. 1331 (2017).

### B. Analysis

Johnson argues that K.S.A. 2015 Supp. 21-5512(a)(9) requires people of common intelligence to guess at its meaning of "other person in a position of authority," and so it "is unconstitutionally vague in violation of due process." The State, however, contends that there is no ambiguity regarding the word "authority," and the statute clearly elucidates which people are "embraced by the phrase at issue in this case." The State's argument is persuasive.

Courts use a two-prong inquiry to determine if a statute is unconstitutionally vague. *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 545, 316 P.3d 707 (2013); *White v. Shipman*, 54 Kan. App. 2d 84, 94-95, 396 P.3d 1250 (2017). First, courts determine whether the statute conveys a sufficiently definite warning and fair notice of the prohibited conduct in light of common understanding and practice. Second, courts determine whether the statute's terms are precise enough to guard against arbitrary and discriminatory enforcement. *City of Lincoln Center*, 298 Kan. at 545. A statute is unconstitutionally vague if it "'forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.' [Citations omitted.]." *White*, 53 Kan. App. 2d at 54. Courts can resolve void-for-vagueness arguments based on the language of the statute alone. See, e.g., *State v. Teter*, 47 Kan. App. 2d 608, 612-15, 278 P.3d 968 (2012) (finding statute regulating the purchase of pseudoephedrine and ephedrine was not unconstitutionally vague based solely on the language of the statute).

Again, the conduct prohibited by K.S.A. 2015 Supp. 21-5512(a) is consensual sexual intercourse, lewd fondling or touching, or sodomy with a person who is not married to the offender. This conduct is prohibited if the offender is a teacher or "*other person in a position of authority*" employed at the school where the child is enrolled. (Emphasis added.) K.S.A. 2015 Supp. 21-5512(a)(9). "Teacher" is defined, in part, to include any other professional employee at a public school offering any of grades kindergarten through 12. K.S.A. 2015 Supp. 21-5512(d)(9).

Next, Johnson contends the law criminalizes otherwise lawful conduct based upon an offender's professional status, so "determining what professions are subject to the law is key." However, in failing to read the statute in light of common understanding and practice, Johnson's interpretation of the statute makes unsupported legal conclusions.

11

The purpose of the statute, read in context, is to prohibit sexual relations within a relationship in which there is an inherent power differential, e.g., employees at a correctional facility and inmates, parole officers and parolees, law enforcement officers and those jailed, foster parents and their foster children, etc. See K.S.A. 2015 Supp. 21-5512(a). The statute is not about "qualifying profession[s]" but preventing those in positions of authority from using their authority to coerce sex from those entrusted to their care.

The term "authority" is understood by persons of common intelligence to mean "the power or right to give commands, enforce obedience, take action." Webster's New World College Dictionary 96 (5th ed. 2014). Contrary to Johnson's contention that a reference to a dictionary "presents disparate examples of what 'authority' could mean," all of her quoted examples reflect the ordinary meaning of the term. This is consistent with the purpose of the statute in context—prohibiting conduct whereby persons in positions of authority abuse their authority to engage in sexual relations with those entrusted to their care.

Johnson argues the phrase in question is an unconstitutionally vague "catchall clause." She cites to *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), in support of her argument. Her reliance on *Johnson* is misplaced. There, the United States Supreme Court specifically found the residual clause within the federal criminal statute at issue asked whether the crime "'*involves conduct*'" that presents too much risk of physical injury. In so finding, the Court held the indeterminacy of the "wide-ranging inquiry" denied fair notice to defendants and invited arbitrary enforcement by judges. 135 S. Ct. at 2557. Here, there is no need for a wide-ranging inquiry regarding prohibited conduct. The inquiry is a simple one: whether the school employee—Johnson—was in a position of authority.

12

Finally, Johnson claims the Legislature attempted to limit the statute's applicability to persons in certain professions at schools and so the statute does not apply to all school employees. Johnson then essentially claims the Legislature disregarded itself when it included the phrase "other person in a position of authority" in the statute: "the inclusion of a catchall phrase applying to other persons in a position of authority allows the arbitrary disregard of the limitations put in place by the legislature."

The statute, however, does not exclude the possibility it could apply to most, if not all, employees in a school. The test within the language of the statute is not an employee's title, but whether the employee was in a position of authority—a fact question. The State attempts to distinguish between school employees who have regular and direct contact with students in the context of the students' presence at the school—librarians, teaching assistants—and those whose primary work tasks do not require interactions with students.

In a dynamic and insulated environment such as a school where children are expected to be deferential to adults, interpreting the statute to mean it cannot apply to all employees is too narrow a reading. Even the broadest reading of the phrase at issue—other person in a position of authority—is precise enough to guard against arbitrary and discriminatory enforcement because it puts school employees on notice the statute could apply to them when acting in a position of authority.

The statute is not unconstitutionally vague and reasonably describes to all persons interacting with others what conduct a person of common intelligence would understand is prohibited. Having found the statute's use of "other person in a position of authority" is not unconstitutionally vague, we turn to address Johnson's claim the evidence presented was insufficient to support her convictions.

13

*Was the evidence sufficient?*

Next, Johnson claims the State presented insufficient evidence to support her convictions for unlawful sexual relations, sexual exploitation of a child, and promoting obscenity to a minor. However, Johnson designated only a fraction of the trial's evidence as part of her record on appeal.

The party claiming an error occurred has the burden of designating a record affirmatively showing prejudicial error. *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015). Without such a record, an appellate court presumes the action of the trial court was proper. *State v. Bridges*, 297 Kan. 989, 1001, 306 P.3d 244 (2013). Even with the limited record available, the record is sufficient to support Johnson's three convictions. We will address the sufficiency of the evidence for each crime separately. Additionally, we will address Johnson's argument that sexual exploitation of a child is an alternative means crime.

### A. *Unlawful sexual relations*

Johnson contends the State did not present sufficient evidence to establish certain elements of the crime of unlawful sexual relations—specifically, whether she was in a position of authority and whether K.E. was a student enrolled at a school where she was employed. The State argues it presented sufficient evidence to support Johnson's conviction because she was in a position of authority as a paraeducator, and K.E. was a student in the Lawrence public schools required to attend the Day School at the JDC. The State's argument is more persuasive.

When sufficiency of the evidence is challenged in a criminal case, the standard of review is "'whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the

defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

K.S.A. 2015 Supp. 21-5512(a)(9) defines unlawful sexual relations as engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy with a person who is not married to the offender if

"the offender is *a teacher or other person in a position of authority* and the person with whom the offender is engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy is a person 16 years of age or older who is *a student enrolled at the school where the offender is employed*." (Emphases added.)

Significantly, according to the statute, a "teacher" includes teachers, coaches, supervisors, principals, superintendents, and "*any other professional employee* in *any public* or private school offering *any of grades kindergarten through 12*." (Emphases added.) K.S.A. 2015 Supp. 21-5512(d)(9).

*1. Johnson was in a position of authority.*

To the degree analysis of this issue requires statutory interpretation, that is a question of law and this court's review is unlimited. *Collins*, 303 Kan. at 473-74. The most fundamental rule of statutory construction is the intent of the Legislature governs if that intent can be ascertained. *Jordan*, 303 Kan. at 1019.

An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute not readily found in its words. Where there is no ambiguity, the court need

15

not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Barlow*, 303 Kan. at 813.

Thus, the State had to prove Johnson was a "person in a position of authority." As a paraprofessional educator at the JDC, Johnson contends the State failed to establish this element. She argues she was not in a position of authority "either in terms of her job working for Lawrence Public Schools or over K.E. in particular." She claims as a paraprofessional educator, her primary duty "was working with children requiring special education." She also claims because she worked under the supervision of a licensed teacher, it was the teacher who was *the* "person in a position of authority," not her.

Johnson's arguments on their face are not realistic. Even if Johnson's *primary* duty was working with children requiring special education, she does not explain how her primary duty did not reflect authority or how it otherwise negated any authority she had by virtue of her other job responsibilities. Further, her argument regarding the licensed teacher's authority suggests no one other than the licensed teacher had any authority in that classroom. Johnson's argument fails to acknowledge positions of authority can be shared.

Johnson also fails to cite to any evidence in the record to support her arguments. Issues not briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). A point raised incidentally in a brief and not argued therein is also deemed abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Also, failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Pewenofkit*, 307 Kan. 730, 731, 415 P.3d 398 (2018).

16

The plain language of the statute addresses Johnson's role at the school as a person in a position of authority. The evidence at trial regarding Johnson's authority in the classroom was uncontested. The record reflects:

- Her job description and self-acknowledged responsibilities;
- K.E.'s perception of her authority;
- Her exercise of that authority in the classroom by sending students, including K.E., to "cool downs";
- Her assigning and grading work; and
- Her interactions with other staff members.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony, if possible. *Keel*, 302 Kan. 560, Syl. ¶ 7. Ultimately, the courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014).

Reading subparagraph (a)(9) *in pari materia* with the rest of the statute, we see other subsections of K.S.A. 2015 Supp. 21-5512 similarly prohibit sexual conduct between department of corrections employees and inmates; parole officers and parolees; and workers, volunteers, "or other person[s] in a position of authority" in a family foster home and their foster children aged 16 years or older. See K.S.A. 2015 Supp. 21-5512(a)(1), (2), and (8). When read in its entirety, it is clear the intent of this statute is to prohibit sexual conduct of certain persons who have authority over other persons where the ability to freely consent is questionable. See *State v. Edwards*, 48 Kan. App. 2d 264, 269, 288 P.3d 494 (2012).

We have previously defined a person in a position of authority as one who has "the power or right to give commands, enforce obedience, take action" (Webster's New World College Dictionary 96), all of which are examples of what Johnson exercised in her role as a paraeducator in the classroom at the JDC. We find the Legislature intended for persons like Johnson to be held to the same standards as teachers when it comes to preventing sexual relations with the students. Johnson, while employed at the JDC, was a "person in a position of authority" as contemplated by K.S.A. 2015 Supp. 21-5512(a)(9). To find otherwise would result in an absurd and unreasonable interpretation of the statute. See *Frierson*, 298 Kan. at 1013.

### 2. *K.E. was a student.*

Next, Johnson contends the State failed to prove K.E. was "a student enrolled at the school where the offender was employed" and argues K.E. was not a student at the school where she was employed. Rather, she claims he was court ordered to attend "educational training at a juvenile detention facility," and she was "not employed at that school" but by Lawrence Public Schools and assigned to the JDC. Johnson argues the Day School was not a school and K.E. was not a student for purposes of determining school district enrollment. Johnson's argument lacks logic.

Giving common words their ordinary meaning, "school" is defined as "[a]n institution of learning and education, esp. for children." Black's Law Dictionary 1546 (10th ed. 2014). A student is "a person who studies, or investigates . . . [or] is enrolled for study at a school." Webster's New World College Dictionary 1441 (5th ed. 2014). The record reflects K.E. was enrolled in Lawrence Public Schools for the 2015-2016 academic year as a 12th grader and assigned by the school district to attend the JDC under a court order.

In sum, the evidence available in the record reflects K.E. was a student enrolled at the JDC school where Johnson was assigned to work. To find otherwise would lead to an absurd and unreasonable application of the statutes. See *Frierson*, 298 Kan. at 1013.

Johnson's real argument about her conviction for unlawful sexual relations amounts to a request for reweighing of the evidence, which this court does not do. See *Chandler*, 307 Kan. at 668. The record before us reflects Johnson was employed at the JDC school and was in a "position of authority" to manage the classroom—including K.E. who was a 17-year-old 12th grade student court ordered to attend the JDC school.

*B.  Sexual exploitation of a child*

Here, Johnson contends the evidence was insufficient to convict her of sexual exploitation of a child because the State did not prove she enticed K.E. to engage in sexually explicit conduct for profit. She argues sexual exploitation of a child is an alternative means crime, which required the State to prove all of the listed means of committing the crime beyond a reasonable doubt. The State argues there is no alternative means issue presented in this case. Accordingly, the State was not required to prove Johnson promoted K.E.'s sexually explicit performance "both for profit *and* to arouse sexual desires." (Emphasis added.) The State has the better argument.

Sufficiency of the evidence is reviewed to determine whether in the context of all the evidence and in a light most favorable to the State, this court is convinced the jury could have found the defendant guilty beyond a reasonable doubt. This court determines this without reweighing the evidence, resolving evidentiary conflicts, or making witness credibility determinations. *Chandler*, 307 Kan. at 668.

Here, Johnson does not argue the evidence was insufficient to prove she promoted K.E.'s sexually explicit performance to arouse sexual desires. See K.S.A. 2015 Supp. 21-

19

5510(a)(1), (d)(2)(B). Again, issues not briefed are deemed waived or abandoned. *Arnett*, 307 Kan. at 650. Likewise, a point raised incidentally in a brief and not argued therein is also deemed abandoned. *Sprague*, 303 Kan. at 425.

Consequently, Johnson asks us to determine whether the Kansas statute prohibiting sexual exploitation of a child is an alternative means statute. "'Whether a statute creates alternative means of committing a crime is a matter of statutory interpretation and construction and is a question of law subject to de novo review on appeal.' [Citation omitted.]" *State v. Castleberry*, 301 Kan. 170, 181, 339 P.3d 795 (2014); *State v. Cottrell*, 53 Kan. App. 2d 425, 433, 390 P.3d 44, *rev. granted* 306 Kan. 1322 (2017).

The alternative-means doctrine is defined as "[t]he principle that when a crime might have been committed in more than one way, the jury must be unanimous on the defendant's guilt but need not be unanimous on the possible different methods of committing the crime, *as long as each possible method is supported by substantial evidence*." (Emphasis added.) Black's Law Dictionary 95 (10th ed. 2014). The Kansas Supreme Court has applied a "super-sufficiency" requirement for evidence in alternative means cases:

> "When a single criminal offense may be committed by alternative means, jury unanimity is not required as to the means by which the crime was committed, as long as substantial evidence supports each alternative means set out in the jury instructions. If the evidence is insufficient on one or more of the means on which the jury has been instructed, the conviction must be reversed." *State v. Brown*, 295 Kan. 181, 184, 284 P.3d 977 (2012).

"When criminal statutes create two or more distinct ways of committing an offense, those ways reflect alternative means. Other criminal statutes establish only one way to commit an offense, although they may use synonymous or redundant terms to define the prohibited conduct." *State v. Schreiner*, 46 Kan. App. 2d 778, Syl. ¶ 1, 264

20

P.3d 1033 (2011). In this case, the record shows Johnson enticed K.E. to create and send to her sexually explicit images and videos.

The purpose of the alternative-means doctrine is generally to avoid concerns regarding jury unanimity. See *State v. Wright*, 290 Kan. 194, 206, 224 P.3d 1159 (2010); *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994); see also *Khan v. State*, 204 P.3d 1036, 1042 (Alaska Ct. App. 2009) (when a defendant is *charged* with a crime under more than one *theory*, the jurors need not unanimously agree on the theory that serves as the basis for the defendant's conviction, but the jurors must unanimously agree that the defendant committed the wrongful deed).

> "[A] statute—and any [jury] instruction that incorporates it—must list distinct alternatives *for a material element of the crime*, not merely describe a material element or a factual circumstance that would prove the crime, in order to qualify for an alternative means analysis and application of the super-sufficiency requirement." (Emphasis added.) *Brown*, 295 Kan. at 184.

Our Supreme Court established the framework for alternative means analysis in *Brown*, instructing us to look at the plain language of the statute first to determine whether the Legislature intended to create alternative means of committing the crime. 295 Kan. at 193.

Johnson was prosecuted for violating K.S.A. 2015 Supp. 21-5510(a)(1), which provides sexual exploitation of a child is: Enticing a child under the age of 18 to engage in sexually explicit conduct with the intent to promote any performance.

Johnson argues the statutory definition of "promote" creates alternative means. See K.S.A. 2015 Supp. 21-5510(d)(2). Under K.S.A. 2015 Supp. 21-5510(d)(2), "promoting" is defined as:

"[P]rocuring, transmitting, distributing, circulating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting or advertising:

 (A) For pecuniary profit; *or*

 (B) with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender or any other person." (Emphasis added.)

Johnson argues the jury in this case was "presented with alternative means for committing the crime of [sexual exploitation of a child] through the presentation of two alternative mens rea requiring the crime to be committed: (1) [for] pecuniary profit, or (2) with intent to appeal to the prurient interest of the defendant or another person." She suggests the Legislature signaled its intent to create alternative means here through the structure of the statute by separating alternatives into distinct subsections or "elements" of the statute, i.e., (d)(2)(A) and (d)(2)(B), which require different mens rea.

However, the Kansas Supreme Court has held that an "or" does not necessarily equal an alternative means. See *Brown*, 295 Kan. at 192. The United States Supreme Court recognized in *Schad v. Arizona*, 501 U.S. 624, 638, 111 S. Ct. 2491, 115 L. Ed. 2d. 555 (1991) (plurality opinion): "Decisions about what facts are material and what are immaterial, or . . . what 'fact[s] [are] necessary to constitute the crime,' and therefore must be proved individually, and what facts are mere means, represent value choices more appropriately made in the first instance by a legislature than by a court. [Citation omitted.]"

In examining legislative intent, a court must determine for each statute what the Legislature's use of a disjunctive "or" is intended to accomplish. "Is it to list alternative distinct, material elements of a crime—that is, the necessary *mens rea, actus reus,* and, in some statutes, a causation element? Or is it to merely describe a material element or a factual circumstance that would prove the crime?" *Brown*, 295 Kan. at 194. The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. Again,

22

however, merely describing a material element or a factual circumstance that would prove the crime does not create alternative means, *even if* the description is included in a jury instruction. 295 Kan. at 194 (citing *Wright,* 290 Kan. at 201).

The Legislature specified the material elements in K.S.A. 2015 Supp. 21-5510 which the State was required to establish to prove sexual exploitation of a child under subparagraph (a)(1): (i) enticing K.E., (ii) a child under 18, (iii) to engage in sexually explicit conduct, (iv) with intent, (v) to promote any performance. Here, jury Instruction No. 6 read in its entirety:

"The defendant is charged with sexual exploitation of a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant, with the intent to promote a performance, enticed K.E. to engage in sexually explicit conduct.

"2. K.E. was less than 18 years old at the time the conduct occurred. The State need not prove that the defendant [knew] the child's age.

"3. This act occurred on or about the 1st day of October, 2015 to the 10th day of December, 2015, in Douglas County, Kansas.

"For purposes of this instruction, 'Promoting' means procuring, transmitting, distributing, circulating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting, or advertising, *for pecuniary profit or with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the defendant or another person*.

"For purposes of this instruction, 'performance' means any film, photograph, negative, slide, book, magazine or other printed or visual medium, any audio tape recording or any photocopy, video, tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk, or any play or other live presentation.

"For purposes of this instruction, 'Sexually explicit conduct' means actual or simulated: Exhibition in the nude; sexual intercourse or sodomy, including genital-

23

genital, oral-genital, anal-genital, or oral-anal contact, whether between persons of the same or opposite sex, masturbation, sadomasochistic abuse with the intent of sexual stimulation; or lewd exhibition of the genitals, female breasts or pubic area of any person.

"The State must prove the defendant committed the crime intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to cause the result complained about by the State.

"The State claims distinct multiple acts which each could separately constitute the crime of sexual exploitation of a child. In order for the defendant to be found guilty of sexual exploitation of a child, you must unanimously agree upon the same underlying act." (Emphasis added.)

The jury instruction signaled the material elements with paragraph numbers 1 through 3. The instruction provided all of the relevant statutory definitions under subsection (d), but did not mirror the statute by dividing the motives included under the definition in subparagraph (d)(2). See K.S.A. 2015 Supp. 21-5510(d)(1)-(3).

Additionally, the jury instruction informed the jurors in order to convict Johnson of sexual exploitation of a child, they had to find she acted intentionally and then defined intentional. Johnson argues there were two "mens rea" found in the statute under the definition of "promoting" and suggests the State had to offer evidence of those two possible intentions—pecuniary profit *and* sexual gratification—behind her enticing K.E. to engage in sexually explicit conduct, record it on video or in a photograph, and then send it to her.

Mens rea is defined as: "The state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime." Black's Law Dictionary 1134 (10th ed. 2014). Essentially, the term means a defendant's intention. The jury instruction signaled one intention—the jury had to determine whether Johnson's intention was to entice K.E. into a sexually explicit performance. The evidence indicated the sexually explicit performance Johnson elicited K.E. to engage in was nude

24

photographs of his genitalia and a video of him masturbating. The evidence consistently demonstrated Johnson did this to arouse or gratify her or K.E.'s sexual desires.

Definitional language that merely elaborates on elements rather than defining the subject crime signals secondary matters—options within means—that do not raise an alternative means issue. *Brown*, 295 Kan. at 198-200. A plain reading of the statute reflects the Legislature used synonymous or redundant terms to define sexual exploitation of a child under subparagraph (a)(1) regarding the various ways in which a defendant can entice a child under the age of 18 to engage in sexually explicit conduct, and to further define "sexually explicit conduct," "promoting," and "performance" under subsection (d). The State was required to prove the elements in (a)(1) individually, not every synonymous term under the statute's subparagraph regarding certain definitions—several of which are divided by the word "or." The statute requires only the State alleges and proves a defendant enticed a child under the age of 18 to engage in sexually explicit conduct with the intent to promote such a performance of sexually explicit conduct by that child. The essential element of the offense the State must prove is the defendant, e.g., persuaded, induced, enticed, or coerced the child to engage in the sexually explicit conduct.

*How* Johnson ultimately intended to use K.E.'s enticed sexually explicit performance was not a material element of the crime. In other words, what Johnson did (sold or used for sexual gratification) with the product of what she did is a demonstration or manifestation of her intention to elicit the performance; it is not a material element of the crime itself.

Further, there is no concern here regarding jury unanimity. The record demonstrates the State did not allege in the complaint or information Johnson exploited K.E. sexually for pecuniary profit. It did not present any evidence at trial or argue to the jury Johnson sexually exploited K.E. for pecuniary profit. There is no question the jury

25

found Johnson sexually exploited K.E. for sexual gratification. The evidence established Johnson enticed K.E.'s sexually explicit conduct to display it with the intent to arouse or gratify her or his sexual desire. Subparagraph (d)(2)(B) merely describes a factual circumstance that serves to prove Johnson's intention to commit the crime; it does not create alternative means.

Under the facts here, the offense was committed in one way: enticing K.E. to engage in sexually explicit conduct on video or in photographs. Johnson then used the product of his performance for her or K.E.'s sexual gratification. This demonstrated her intent to entice the performance. The subpoints in the definitional subparagraph describing options within the means of "promoting" do not create an alternative means crime requiring super-sufficiency of the evidence.

### C. Promoting obscenity to a minor

As her final issue, Johnson contends the evidence was insufficient to convict her of promoting obscenity to a minor. She argues for the statute to apply, she had to transmit physical things, rather than the digital photographs and videos transmitted in her case. The State argues Johnson's reading of the statute and its definition of the word "tangible" leads to an absurd result. The State's argument is persuasive.

As stated earlier, sufficiency of the evidence is reviewed to determine whether in the context of all the evidence and in a light most favorable to the State, this court is convinced the jury could have found the defendant guilty beyond a reasonable doubt. This court determines this without reweighing the evidence, resolving evidentiary conflicts, or making witness credibility determinations. *Chandler*, 307 Kan. at 668. To the degree analysis of this issue requires statutory interpretation, it is a question of law subject to de novo review. *Collins*, 303 Kan. at 473-74.

26

Promoting obscenity to a minor arises under K.S.A. 2015 Supp. 21-6401(a)(1) and (b), which define "promoting obscenity" as recklessly "[m]anufacturing, mailing, *transmitting*, publishing, distributing, presenting, exhibiting or advertising any obscene material . . . where a recipient of the obscene material . . . is a child under the age of 18 years." (Emphasis added.) Johnson's sole argument here is the State failed to prove several photographs of her breasts and vagina and the two masturbation videos she sent to K.E. were "material," as defined by the statute. She does not challenge the jury's finding the material was obscene or transmitted but only that it was "material."

Under K.S.A. 2015 Supp. 21-6401(f)(2), "material" is defined as "any *tangible* thing which is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound or other manner." (Emphasis added.) Johnson argues the statute does not apply to digital photographs or videos because they are not "tangible." "The files simply do not exist in a physical format." In contrast, the State provides several definitions of "tangible," many of which do not include the requirement of a three-dimensional physicality or touchability. Again, we find the State's argument convincing.

The most fundamental rule of statutory construction is the intent of the Legislature governs if that intent can be ascertained. *Jordan*, 303 Kan. at 1019. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute not readily found in its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Barlow*, 303 Kan. at 813.

27

Significantly, while the statute defines "material" to include something "tangible," it does not define "tangible." The jury was not instructed beyond the word "material," which was part of an element of the crime the State was required to prove.

It is relevant to note that during deliberations, the jury presented the trial court with a question regarding an undefined word in jury Instruction 6 asking the court for a definition of the word "enticed." The parties and the court agreed they could not answer questions regarding definitions not already provided. Johnson's defense counsel also requested the court admonish the jurors to not use their phones to look up the definition. The district court stated its response to the jurors would be: "'The court cannot provide the jury with definitions beyond those already provided in the instructions.'" When the jury came in, the district judge read that response to its question and then reminded the jurors not to use their phones to look up the definition.

The jury heard the evidence and was instructed on the elements the State had to prove. After being so instructed, the jury found Johnson guilty of promoting obscenity to a minor. Juries are presumed to have followed the instructions given by the district court. *State v. Kettler*, 299 Kan. 448, 478, 325 P.3d 1075 (2014); *State v. Fulton*, 269 Kan. 835, 842, 9 P.3d 18 (2000). Johnson does not make any arguments on appeal to rebut this presumption.

Since "tangible" was not defined for the jury, whether the images and videos in evidence were "material" as contemplated by the statute was a question for the jury. Appellate courts do not reweigh evidence or resolve evidentiary conflicts. *Chandler*, 307 Kan. at 668.

Additionally, canons of statutory construction support Johnson's conviction for promoting obscenity to a minor. When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of

28

reconciling and bringing the provisions into workable harmony if possible. *Keel*, 302 Kan. 560, Syl. ¶ 7. Ultimately, the courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *Frierson*, 298 Kan. at 1013.

Here, the jury was instructed the State had to prove Johnson "transmitted" the obscene material. While the statute defined "material," it did not define the aspect of the element "transmit." However, the word can commonly be understood to mean "to communicate (news, etc.)," or "to send out (radio or television broadcasts, etc.) by electromagnetic waves—*vi*. to send out radio or television signals." Webster's New World College Dictionary 1540 (5th ed. 2014). Giving common words their ordinary meaning, the word "transmit" is indicative of electronically stored images or digital media. Johnson does not explain how one "transmits" physical photographs and videos.

Considering the various provisions of K.S.A. 2015 Supp. 21-6401 *in pari materia*, we find the Legislature intended "material" to include digital media, which is shared by sending or transmitting it to another person. The intent in sending the material to someone else is to share it with another person and for that person to see it. To construe the statute otherwise would lead to an unreasonable and absurd result.

When we review the record as submitted and in a light most favorable to the State, we are convinced the jury reasonably found Johnson guilty beyond a reasonable doubt of unlawful sexual relations, sexual exploitation of a child, and promoting obscenity to a minor by transmitting obscene digital images to K.E.

Affirmed.